2013 Ark. App. 84

**Cherrelle Y. CAMPBELL, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
**Appellee.**

**No. CA 12–871.**

Court of Appeals of Arkansas.

Feb. 13, 2013.

Deborah R. Sailings, Arkansas Public Defender Commission, for appellant.

No response.

BRANDON J. HARRISON, Judge.

Cherrelle Campbell appeals the termination of her parental rights regarding two of her children: T.C., born 4 July 2008; and L.C., born 2 July 2009.[1] Campbell's counsel has filed a no-merit brief pursuant to *Linker–Flores v. Ark. Dep't of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004) and Ark. Sup.Ct. R. 6–9(i) (2012), asserting that there are no issues of arguable merit to support an appeal and requesting to be relieved as counsel. Campbell was notified of her right to file pro se points for reversal pursuant to Ark. Sup. Ct. R. 6–9(i)(3), and she did so. Because there was sufficient evidence to support the circuit court's decision to terminate Campbell's parental rights, and there are no issues of arguable merit arising from adverse rulings during the termination hearing, we grant counsel's motion to withdraw and affirm the circuit court's termination order.

This case began on 23 September 2011, when the Division of Children & Family Services (DCFS) received a call requesting a safety assessment for two minor children, T.C. and L.C. This request was made after the Child Abuse Hotline received a report regarding the death of the children's three-month-old sibling, A.C., who died on 16 August 2011. According to the medical examiner, cocaine was found in A.C.'s system, and it was a contributing factor in his death. The children's mother, appellant Cherrelle Campbell, was the primary suspect in the child's death. The day that the request for a safety assessment was made, DCFS contacted the family and informed them that T.C. and L.C. were going to be taken into custody pending the outcome of the investigation into A.C.'s death. DCFS exercised a seventy-two-hour hold on the children and placed them in a temporary foster home.

On 26 September 2011, the Arkansas Department of Human Services (DHS) filed a petition in the Pulaski County Circuit Court seeking emergency custody of T.C. and L.C. DHS also asked that the children be adjudicated dependent-neglected. Attached to the petition was the affidavit of Cora Wilson, a DHS employee, who explained the events that caused DHS to take custody of the children, including the circumstances of A.C.'s death. That same day, the court entered an ex parte order that granted custody of the children to DHS and found probable cause to believe that the children were dependent-neglected.

After a probable-cause hearing on 3 October 2011, the court entered an order finding that probable cause existed to issue the ex parte order for emergency custody and that probable cause still existed for the continuation of the emergency order. The court ordered that the children re-

---

1. The father's parental rights were also terminated as to these children, but he is not a party in this appeal.

main in DHS's custody. On 13 January 2012, an adjudication-and-disposition order was entered. The court found, by a preponderance of the evidence, that the children were dependent-neglected because they were at substantial risk of serious harm due to neglect. This finding was based on a determination that the petition's allegations and DHS's affidavit were true. The court also noted that Campbell had stipulated that DHS could prove the allegations. The court set the goal of the case as reunification and approved a case plan that allowed Campbell supervised visitation and ordered Campbell to, among other things, attend and participate in individual and family counseling, refrain from using illegal drugs and alcohol, submit to a drug and alcohol assessment and follow the recommendations of that assessment, submit to weekly drug screens, complete parenting classes, and obtain stable housing and employment.

A review hearing was held on 14 March 2012. Campbell did not attend. After the hearing, the court entered an order finding that reunification was no longer an appropriate case-plan goal. Regarding Campbell's conduct, the court made these findings:

> Mother has failed to comply with the case plan and court orders. Specifically, she currently has criminal charges pending for forgery. DHS does not have a current address for her and she has not visited since January 5, 2012, nor provided any support for the juveniles. The mother is not participating one bit or done anything to correct the things that caused the juveniles to come into care. She has made no progress towards alleviating or mitigating the causes of the juveniles' removal from the home.

In late April 2012, DHS filed an amended petition to terminate Campbell's parental rights.[2] In the petition, DHS alleged three grounds for termination under statutory provisions for (1) ⌐₄termination of parental rights if the parent has abandoned the juvenile; (2) termination of parental rights if the court has found the juvenile or a sibling dependent-neglected as a result of neglect that could endanger the life of the child; and (3) termination due to other factors that arose after the original petition for dependency-neglect that demonstrate a return of the child is contrary to his health, safety, or welfare. Ark.Code Ann. § 9–27–341(b)(3)(B)(iv), (vi) & (vii) (Supp.2011).

### Testimony During the Termination Hearing

Campbell testified that the last time she contacted DHS was in April 2012, when she informed it that she was moving in with her mother, who lived in West Helena. Campbell explained that she had stopped visiting her children because she was being drug-tested weekly, and she knew she would test positive for marijuana. She did say, however, that it had been approximately six months since she had used any illegal drugs.

Campbell admitted that she had pending criminal charges for forgery and endangerment of a minor. On the forgery charge, she stated that she could receive a sentence of three to ten years' imprisonment, but that she had been offered three years' probation. She testified that she had started a drug-treatment program in Hot Springs but did not complete it. She also said that she believed she could complete drug treatment, obtain a psychological evaluation, and complete any counsel-

2. The original petition, filed 11 April 2012, had incorrectly stated the date of the termi-   nation hearing.

ing by September, which would be one year from the time that the children were placed in foster care. Campbell acknowledged that she had not complied with "the system" but also said that she had been doing what she needed to do to get her children back by not using drugs or hanging out with "those crowds."

Campbell testified that her mother wanted the children to be placed with her, that her mother had always been willing to participate in the case, and that she wanted her mother to be considered as a permanent custodian for her children. Campbell asserted that she had a stable home with her mother and a job at a restaurant.

Campbell also said that she had never intended to abandon her children, nor had she been asked to pay support for them and not done so. She testified that she gave her mother-in-law, who had custody of the children, $200 in February 2012, and that she had not been asked to provide anything else for the children. She testified that her mother-in-law was good with her children and treated them fairly, but that she believed it would be in the children's best interest for her mother to have custody because she lived with her mother, too.

Campbell acknowledged that she was present at the staff meeting that developed the case plan for her case, and she knew what she was supposed to be doing according to the case plan. She admitted, however, that she had not established and maintained employment that would allow her to be self-sufficient, had not followed all the court orders and services listed in the case plan, had not been assessed for individual therapy, and had stopped visiting her children when she was told she would be drug-tested. She also admitted that she could have had a supervised visit with her children on Christmas Day had she tested clean on December 22, but she did not show up for that drug test because she knew she would not pass. Campbell also conceded that she had not maintained stable housing since her children had been placed in foster care and that she had stayed in six different places since September 2011.

Comera Farmer, the caseworker assigned to this case since it was opened, testified that between the time that the children were adjudicated dependent-neglected and the review hearing on 14 March 2012, DHS had offered Campbell a psychological evaluation, in-patient drug treatment, therapy services, parenting classes, supervised visitation, transportation assistance, a referral for drug-and-alcohol assessment, and random drug screens. She testified that DHS had made reasonable efforts to provide services and that the court made a finding that DHS had made reasonable efforts to provide services. Farmer also stated that the court made a finding that Campbell had not participated in services that DHS offered and that she had not complied with the court orders. Farmer explained that the court changed the goal of the case to adoption because the parents were not making meaningful efforts to participate in court-ordered services to achieve the goal of reunification.

Farmer also testified that, after the March 14 review hearing, she had no contact with Campbell until April 23, when she and Campbell spoke on the phone and Campbell informed her that she had moved to Phillips County. Farmer stated that Campbell did not ask about services but wanted the kids to be placed with her mother. Farmer testified that the parents were cooperative when the case first started, but that after the children were placed with Ms. Avance (the children's paternal grandmother), the parents became less receptive to services the department offered.

Farmer also said that the parents appeared to be unmotivated and failed to follow through with the services provided, and she believed it was in the children's best interest to terminate Campbell's parental rights because she had made only minimal to partial progress toward achieving the goal of reunification and had minimal visitation with the children.

Monica Spencer, the adoption specialist assigned to T.C. and L.C., said that the children had some developmental delays but that they were receiving services for those delays and that the delays would not keep the children from being adopted. She testified that there were families available to adopt the children and that one family in particular had been identified and qualified as an adoptive placement. According to Spencer, adoption was very likely.

Yvonne Corbin, Campbell's mother, asked the court to give her permanent custody of the children. She testified that she knew the children had been put into foster care in September, but that she and Ms. Avance had agreed that it would be easier for Ms. Avance to get custody of the children. Therefore, Corbin testified, she did not complete and return the packet of information she received from DHS that would have allowed her home to be considered as a possible placement for the children. Corbin stated that she believed Ms. Avance had been taking good care of her grandchildren but that it would be better for the children to be with her because Campbell would get to see them. Corbin testified that she was willing and able to keep the children until they both turned eighteen if needed.

Ella Avance said, among other things, that she was the foster parent of T.C. and L.C. and that they had been in her home since October 2011. She testified that both of the children were "getting taller

and bigger and they're just doing great." She also testified that the only money she had ever received from the children's parents was a one-time payment of $200 from each parent. When asked by the court, Avance confirmed that she would like to have the children in her home permanently, either as their guardian or as their adoptive parent.

*The Circuit Court's Ruling*

After hearing closing arguments from the parties, the court announced its findings. It found that DHS had not proven the grounds for termination due to (1) abandonment, or (2) a juvenile or sibling dependent-neglected as a result of neglect that could endanger the life of the child. The court did rule, however, that there was "absolutely more than enough evidence" to terminate Campbell's parental rights given other factors that arose after the original petition for dependency-neglect had been filed, which demonstrated that returning the children to Campbell would be contrary to their health, safety, or welfare. Here is how the circuit court viewed the evidence:

> [N]either parent has done what is required of them and the subsequent factors are they've proven that they don't intend to do anything. Mom has completed parenting classes, that's the only thing that she's completed. . . . Has not had the random drug screens required—I don't even know the list, but has not completed the psychological evaluation, has not completed the residential substance abuse treatment, has not visited her children as required, has not maintained stable housing and employment. Just the list goes endless. And Mom and Dad are not fit and proper parents. . . . And it's concerning to me that these children have two parents who could have . . . had they started

services and taken advantage of them from the beginning, they could have completed a bunch of them by now. Could possibly have had the children back home. Yet we're way down the road to termination. And the goal has been adoption for a period of time. And so nothing has indicated that either one of these parents have—has done a thing to show that they could rehabilitate their services—their circumstances, so the children can not be returned. These children need permanency, they need structure, they need safety, they need stability.

The court also found that the children would be harmed if returned to their parents, that DHS has made reasonable efforts to provide appropriate services for the parents and has an appropriate plan for the children's placement, and that it was very likely that the children would be adopted. The court reiterated that "it's more than clear and convincing evidence, more than ample evidence" for termination. The court entered an order terminating Campbell's parental rights on 23 July 2012, and she timely appealed to this court.

### Standard of Review

A circuit court's order that terminates parental rights must be based on findings proven by clear and convincing evidence. Ark.Code Ann. § 9–27–341(b)(3) (Supp. 2011); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is proof that will produce, in the fact-finder, a firm conviction on the allegation sought to be established. *Dinkins*, 344 Ark. 207, 40 S.W.3d 286. We will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.*, 40 S.W.3d 286. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*, 40 S.W.3d 286. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit judge to assess the witnesses' credibility. *Id.*, 40 S.W.3d 286.

### The No–Merit Brief and Sufficiency of the Evidence

■ In her no-merit brief, Campbell's counsel contends that clear and convincing evidence supports the termination and that the termination would be in the children's best interest. Counsel notes Campbell's continued drug use, which caused Campbell to stop visiting her children; her failure to complete drug treatment; her lack of stable housing and employment; her failure to complete a psychological evaluation or enter counseling; and her pending felony charges, which might result in prison time. Regarding the best interest of the children and the potential harm they may face if returned to Campbell, counsel cites Campbell's failure to obtain drug treatment—a particularly relevant point given that illegal drug use was a contributing factor in the death of the children's sibling, A.C.

We agree that the circuit court had ample evidence upon which to find that it was in T.C. and L.C.'s best interest for Campbell's parental rights to be terminated. Campbell failed to comply with the case plan. These factors arose after the original petition for dependency-neglect was filed, and they show that returning the children to Campbell would be contrary to their health, safety, or welfare. The factors were proven by clear and convincing evidence. We therefore agree that a challenge to the sufficiency of the evidence supporting the court's termination order presents no meritorious grounds for appeal.

*Three Additional Adverse Rulings*

■ In addition to the sufficiency of the evidence, the circuit court made three adverse rulings regarding Campbell's case during the termination hearing. During Campbell's testimony, her attorney attempted to enter into evidence purported pay stubs from Campbell's restaurant job. The attorney ad litem objected on hearsay grounds and also noted that the pay stubs contained no identification of, or reference to, any business provider. DHS's counsel joined in the objection and stated that there was no identifying information as to where the pay stubs came from. The court sustained the objection and did not admit the pay stubs into evidence. The pay stubs were not proffered into evidence, and to challenge a ruling excluding evidence, an appellant must proffer the excluded evidence so as to permit review of the court's decision. *Vasquez v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 575, 337 S.W.3d 552. ⌊₁₁Thus, the circuit court's exclusion of the pay stubs does not constitute a meritorious ground for appeal.

■ The second adverse ruling occurred when the court allowed Farmer to state whether, in her opinion, a parent's failure to visit her children for six months constituted abandonment. Campbell's attorney objected on relevancy grounds, and the attorney ad litem clarified that she was not asking for a legal opinion but was only seeking Farmer's perception as a caseworker. The court acknowledged that determining abandonment under the legal definition was within the court's purview but ruled that Farmer could state her perception of whether such behavior was abandonment. Here, Campbell's counsel argues, and we agree, that because abandonment was not a basis for the termination order, Campbell was not prejudiced by this ruling. So, this ruling presents no meritorious grounds for appeal.

■ The third adverse ruling also occurred during Farmer's testimony, when the attorney ad litem asked Farmer how the bond between the children and their parents was affected by the children not seeing their parents for six months. Campbell's attorney objected that Farmer was "not a psychologist for a child, she's not licensed and trained in that area, and I don't know if she can testify to what would happen to a bond." The court ruled that, based on Farmer's experience and observations as a caseworker, Farmer could answer the question. Here, Campbell's counsel argues that Farmer was essentially an expert witness under Ark. R. Evid. 702 and that the court did not err in letting her testify, based on her experience and training, on how the parent-child bond can be affected. We agree that the court did not abuse its discretion in allowing this testimony. This ruling therefore presents no meritorious grounds⌊₁₂for appeal.

*Campbell's Pro Se Points*

Finally, in Campbell's pro se points for reversal, she asserts that she has a good support system through her family, that she has become a full-time employee at BPS Industries, and that she is generally "going in the right direction" and rebuilding her life. We have reviewed Campbell's pro se arguments. They do not present any reason for us to reverse.

*Conclusion*

After carefully examining the record and counsel's well-presented brief, we find that she has complied with the requirements established by the Arkansas Supreme Court for no-merit termination cases and hold that the appeal is wholly without merit. The circuit court's decision to terminate Campbell's parental rights was not clearly erroneous. We therefore grant the

motion to withdraw and affirm the order terminating Campbell's parental rights.

Affirmed; motion to withdraw granted.

WYNNE and GRUBER, JJ., agree.